**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-10951

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ROBERT LEE WHALEY

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Defendant-Appellant Robert Lee Whaley appeals his conviction under 18 U.S.C. § 2250(a) for failure to register in accordance with the Sex Offender Registration and Notification Act ("SORNA"). We affirm.

**I**

Whaley stipulated to the relevant facts as part of a plea agreement. In 1999, Whaley was convicted, under Kansas law, of aggravated sexual battery in Marshall County, Kansas, and sentenced to 57 months of imprisonment. Kansas law also required Whaley to register as a sex offender upon his release from prison, and he signed notices explaining his registration obligation in 1999 and 2003. Both notices informed Whaley, inter alia, that if he moved to another state, he was required to register in that state within ten days.

Whaley registered without incident through April 5, 2007. Sometime before June 11, 2007, he moved without leaving a forwarding address and did not update his registration. On March 5, 2008, Whaley was found in Texas, and he admitted to having moved from Kansas to Texas between April 2007 and March 2008 without registering as a sex offender in Texas or updating his registration in Kansas.

On March 12, 2008, Whaley was indicted on one count of violating 18 U.S.C. § 2250(a) by traveling in interstate commerce and knowingly failing to register and update a registration as required under SORNA. Whaley moved to dismiss the indictment on various constitutional grounds, and the district court denied the motion. Whaley then entered a conditional guilty plea, reserving the right to raise his constitutional challenges on appeal. Whaley was sentenced to 21 months' imprisonment followed by five years of supervised release. He timely filed a notice of appeal.

## II

Whaley puts forth several constitutional challenges to his conviction. We review these challenges de novo. *See United State v. Luna*, 165 F.3d 316, 319 (5th Cir. 1999).

SORNA was enacted July 27, 2006, more than three years after Whaley was released from prison in Kansas. It requires all sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The rules for initial and updated registration are as follows:

> (a) In general. A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides,

where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--
(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913. SORNA provides a federal criminal penalty for traveling in

interstate commerce and failing to register or update a registration:

> (a) In general -- Whoever -- (1) is required to register under the Sex Offender Registration and Notification Act . . . (2)(B) travels in interstate or foreign commerce . . . ; and (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act . . . shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). SORNA directs the Attorney General to "maintain a national database . . . for each sex offender . . . ." 42 U.S.C. § 16919(a). In addition, SORNA directs each state "to substantially implement this subchapter" or lose "10 percent of the funds that would otherwise be allocated" to the state under the Omnibus Crime Control and Safe Streets Act of 1968 for a given year. *Id*. § 16925(a). Among other things, implementation requires the states to: "maintain a jurisdiction-wide sex offender registry conforming to the requirements of [SORNA]," *id*. § 16912(a); "provide a criminal penalty" for a sex offender's failure to register, *id*. § 16913(e); and "immediately . . . provide the information in the registry" about an offender who has registered or updated a registration to, among other entities, the Attorney General, local law enforcement agencies, and certain social service and volunteer organizations that work with children, *id*. § 16921(b).

## III

### A

We first consider Whaley's argument that the registration, 42 U.S.C. § 16913, and penalty, 18 U.S.C. § 2250, provisions of SORNA exceed Congress's authority under the Commerce Clause. The Commerce Clause of the U.S. Constitution gives Congress the power "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. Const.

4

art. I, § 8. The Supreme Court has identified three general categories of activity that Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*United States v. Lopez*, 514 U.S. 548, 558–59 (1995) (citations omitted); *see also Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005); *United States v. Morrison*, 529 U.S. 598, 608–09 (2000).

Whaley asserts that the penalty provision can only be justified under the third *Lopez* prong as it does not regulate the channels of interstate commerce nor concern the regulation of persons or things in interstate commerce. We disagree. Because § 2250 applies only to those failing to register or update a registration after traveling in interstate commerce—in this case, Whaley traveled from Kansas to Texas—it falls squarely under the first *Lopez* prong. *See United States v. Kung-Shou Ho*, 311 F.3d 589, 597 (5th Cir. 2002), *cert. denied*, 539 U.S. 914 (2003) ("[The first *Lopez*] category includes the regulation of highways, railroads, air routes, navigable rivers, and telecommunications networks. The category also reaches the misuse of the channels of interstate commerce." (citations and quotation omitted)). As we have previously observed, "[i]t has long been held that Congress may forbid or punish the use of channels of interstate commerce 'to promote immorality, dishonesty, or the spread of any evil or harm to the people of other states from the state of origin.'" *United States*

5

*v. Lankford*, 196 F.3d 563, 571 (5th Cir. 1999) (quoting *Brooks v. United States*, 267 U.S. 432, 436 (1925)); *see Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 256 (1964) ("The authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." (quotation omitted)); *N. Am. Co. v. SEC*, 327 U.S. 686, 705 (1946) ("Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature."). Through § 2250, Congress has forbidden sex offenders from using the channels of interstate commerce to evade their registration requirements, and we have no doubt that it was within its power under the Commerce Clause to do so.[1]

Whaley similarly asserts that § 16913 can only be justified under the third *Lopez* prong—and indeed, § 16913 plainly applies to sex offenders not in interstate commerce. In making this argument, however, Whaley treats § 16913

---

[1] Our decision is consistent with the other circuits to have considered the issue. *See United States v. Gould*, 568 F.3d 459, 470–72 (4th Cir. 2009) (concluding that § 2250 is valid under the first two *Lopez* prongs); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009) ("Section 2250 is a proper regulation falling under either of the first two *Lopez* categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce."); *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2383 (2009) ("Clearly, [the defendant's] travel across state lines to and from Oklahoma falls under the first or second of the *Lopez* prongs. Whether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of *Lopez* confirm Congress's authority to regulate this type of activity."); *United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 2431 (2009) ("[Section 2250] thus derives its authority from each prong of *Lopez*--and most specifically, the ability to regulate 'persons or things in interstate commerce' and 'the use of the channels of interstate commerce.'"); *see also United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008), *petition for cert. filed*, 77 U.S.L.W. 3610 (U.S. Apr. 22, 2009) (No. 08-1301), (rejecting defendant's Commerce Clause argument).

as if it were a stand alone statute. We think that it must instead be analyzed in connection with § 2250. Both provisions were enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, and are clearly complementary: without § 2250, § 16913 lacks federal criminal enforcement, and without § 16913, § 2250 has no substance. Section 2250 is plainly aimed at ensuring that sex offenders register and update previous registrations when moving among jurisdictions. *See, e.g., United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008)*, petition for cert. filed*, 77 U.S.L.W. 3610 (U.S. Apr 22, 2009) (No. 08-1301) ("[T]he statutory aim is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered  . . . ."). As the Eighth and Eleventh Circuits have recognized, this goal is also reflected in § 16913's focus on sex offenders who change residence or maintain multiple residences and its interjurisdictional reporting requirements. *See* 42 U.S.C. § 16913(a) ("A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."); *id.* § 16913(c) ("A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register."); *United States v. Ambert*, 561 F.3d 1202, 1212 (11th Cir. 2009); *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009), *cert. denied*, 129 S. Ct. 2812 (2009).

Moreover, SORNA's focus on the problem of sex offenders escaping their registration requirements through interstate travel—rather than on requiring sex offender registration generally—is indicated by the fact that although "[b]y the time that SORNA was enacted in 2006, every State and the District of Columbia had enacted a sex offender registration law," *United States v. Gould*, 568 F.3d 459, 464 (4th Cir. 2009), Congress stated that SORNA's purpose is "to protect the public from sex offenders and offenders against children" by "establish[ing] a *comprehensive* national system for the registration of those offenders," 42 U.S.C. § 16901 (emphasis added), *i.e.*, one which cannot be eluded by moving around the country.[2] And perhaps most significantly, neither § 16913 nor any other provision of SORNA creates any federal penalty for failing to register while remaining within a state: a sex offender who does not travel in interstate commerce may ignore SORNA's registration requirements without fear of federal criminal consequences. *See Howell*, 552 F.3d at 716 ("[T]he statutory scheme Congress created to enforce § 16913 demonstrates Congress was focused on the interstate movement of sex offenders, not the intrastate activity of sex offenders.").

Thus, considering § 16913 together with § 2250 and SORNA as a whole, § 16913's registration requirements are a means of furthering the goal of preventing offenders from "slipping through the cracks" by changing jurisdictions. *See Ambert*, 561 F.3d at 1212 ("Congress did not focus on individual local registration as an end in itself, but rather as part of its goal to create a system to track and regulate the movement of sex offenders from one

---

[2] *See also Gould*, 568 F.3d at 472–74 (collecting legislative history showing that Congress created the SORNA registration system "to prevent sex offenders from traveling among the States to avoid state registration").

jurisdiction to another."); *Howell*, 552 F.3d at 716 ("We believe Congress enacted SORNA to track the interstate movement of sex offenders."); *United States v. Lawrance*, 548 F.3d 1329, 1338 (10th Cir. 2008) ("SORNA clearly intends to regulate interstate activity, *i.e.*, the evasion of sex offender registration requirements by sex offenders who have crossed jurisdictional lines."). And to the extent that § 16913 applies to sex offenders remaining intrastate, the Necessary and Proper Clause provides Congress with the necessary authority. As Justice Scalia has explained in the context of the third *Lopez* category, the Necessary and Proper Clause gives Congress the power to "regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. The relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power." *Raich*, 545 U.S. at 35–37 (Scalia, J., concurring) (citation omitted); *see United States v. Darby*, 312 U.S. 100, 121 (1941) ("Congress . . . may choose the means reasonably adapted to the attainment of the permitted end, even though they involve control of intrastate activities. Such legislation has often been sustained with respect to powers, other than the commerce power granted to the national government, when the means chosen, although not themselves within the granted power, were nevertheless deemed appropriate aids to the accomplishment of some purpose within an admitted power of the national government."); *Ambert*, 561 F.3d at 1211–12; *Howell*, 552 F.3d at 714–16. This power also extends to Congress's regulation of the instrumentalities of interstate commerce:

> As the Court said in the *Shreveport Rate Cases*, the Necessary and Proper Clause does not give "Congress . . . the authority to regulate the internal commerce of a State, as such," but it does allow

9

> Congress "to take all measures necessary or appropriate to" the effective regulation of the interstate market, "although intrastate transactions . . . may thereby be controlled." 234 U.S., at 353, 58 L. Ed. 1341, 34 S. Ct. 833; *see also Jones & Laughlin Steel Corp.*, 301 U.S., at 38, 81 L. Ed. 893, 57 S. Ct. 615 (the logic of the *Shreveport Rate Cases* is not limited to instrumentalities of commerce).

*Raich*, 545 U.S. at 38 (Scalia, J., concurring). It extends to Congress's power to regulate the channels of interstate commerce as well.[3]

Applying this standard here, we conclude that requiring sex offenders to register both before and after they travel in interstate commerce—which clearly facilitates monitoring those movements and which has a minimal practical impact on intrastate sex offenders (who cannot be punished under federal law for failure to register unless and until they travel in interstate commerce[4])—is "reasonably adapted" to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions. *See Ambert*, 561 F.3d at 1212 ("Section 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause. The requirement that sex offenders register under § 16913 is necessary to track those offenders who move from jurisdiction to jurisdiction."); *Howell*, 552 F.3d at 717 ("In order to monitor the

---

[3] We recognize the necessity of maintaining the "distinction between what is truly national and what is truly local" so as not to "convert congressional authority under the Commerce Clause to a general police power," *Lopez*, 514 U.S. at 567–68, and emphasize that Congress's authority in this area cannot extend beyond what is necessary and proper to achieving Congress's interstate regulatory goals. *See Raich*, 545 U.S. at 38 (Scalia, J., concurring) ("[E]ven when the end is constitutional and legitimate, the means must be 'appropriate' and 'plainly adapted' to that end. Moreover, they may not be otherwise 'prohibited' and must be 'consistent with the letter and spirit of the constitution.' These phrases are not merely hortatory." (quoting *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819)).

[4] Or meet the other jurisdictional requirements of § 2250(a).

interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated. Without knowing an offender's initial location, there is nothing to ensure the government would know if the sex offender moved."); *see also Gould*, 568 F.3d at 475 (concluding that "[r]equiring *all* sex offenders to register is an integral part of Congress' regulatory effort and 'the regulatory scheme could be undercut unless the intrastate activity were regulated'" (quoting *Raich*, 545 U.S. at 24–25)). We therefore reject Whaley's Commerce Clause challenge.

## B

Whaley also argues that his conviction violates the Due Process Clause because he never received notice that he was required to register under SORNA. Whaley was notified of his obligation to register as a sex offender under Kansas law, but he was never directly notified of the requirement to register under SORNA or the increased federal penalties for failing to register under SORNA. A provision of SORNA, 42 U.S.C. § 16917, addresses notification of offenders. Because Whaley was released from prison before SORNA was enacted, he was not informed of the federal registration requirement upon release from custody as described in § 16917(a). Section 16917(b) instructs the Attorney General to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section." At the time of Whaley's indictment, the Attorney General had not yet issued those rules.[5]

In general, ignorance of the law is not a defense to criminal prosecution. *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994); *see also Bryan v.*

---

[5] The regulations were issued on July 2, 2008. *See* The National Guidelines for Sex Offender Registration and Notification ("SORNA Guidelines"), 73 Fed. Reg. 38030, 38063 (July 2, 2008). Whaley was indicted on March 12, 2008.

11

*United States*, 524 U.S. 184, 193 (1998) ("[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."). However, the Supreme Court has recognized an exception to this principle. When a law requires someone to undertake an affirmative act to avoid criminal punishment, some knowledge or notice of the law is required. *See Lambert v. California*, 355 U.S. 225, 229 (1957). At issue in *Lambert* was a municipal law requiring anyone who had been convicted of a felony to register with the police if he or she stayed in Los Angeles for five days or more. *Id*. at 226. "Violation of [the statute's] provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking." *Id*. at 229. The Court held that the law violated due process. *Id*. at 229–30.

Whaley relies on *Lambert*. Unlike the defendant in *Lambert*, however, Whaley was aware that he was required to register his address with the government. *Lambert* relied on the passive nature of the crime *combined* with the lack of "circumstances which might move one to inquire as to the necessity of registration." *Lambert*, 355 U.S. at 229. In this case, Whaley was certainly aware that he was required to register under Kansas law, which mandated that he notify the sheriff's department if he moved out of state and that he register in the new state. At his conviction in 1999, Whaley signed an offender registration form attached to a Notice To Offenders. This notice included the statement "I understand that if I change my residence to another state, I must inform the law enforcement agency where last registered of my change of residence and must register in the new state within ten (10) days." Upon release from prison in 2003, Whaley signed an updated, longer Notice to Offenders,

12

which included the following: "I understand that if I change my residence to another state, I must inform the law enforcement agency where last registered and the Kansas Bureau of Investigation of my change of residence and must register in the new state within ten (10) days." We agree with the other circuits to have addressed this issue that notice of a duty to register under state law is sufficient to satisfy the Due Process Clause. *See Gould*, 568 F.3d at 468–69; *Dixon*, 551 F.3d at 584; *United States v. Hinckley*, 550 F.3d 926, 938 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2383 (2009); *United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 2431 (2009).[6]

## C

Finally, Whaley argues that the section of SORNA authorizing the Attorney General to issue regulations is an impermissible delegation of legislative authority to the executive branch. That section states:

> (d) Initial registration of sex offenders unable to comply with subsection (b) of this section
>
> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). Under Whaley's reading, this statute gives the Attorney

---

[6] Whaley also argues that because the government did not inform him of SORNA's requirements, he could not have "knowingly" failed to register under § 2250(a). Assuming *arguendo* that Whaley preserved this argument in his conditional plea, it is meritless. As noted above, ignorance of the law is not a defense, Whaley knew he was required to register under Kansas law, and "SORNA's criminal provision is not a specific intent law. . . . There is no language requiring specific intent or a willful failure to register such that he must know his failure to register violated federal law." *Gould*, 568 F.3d at 468.

General the authority to determine whether SORNA's registration requirements apply to persons convicted before July 27, 2006.[7]

A circuit split exists as to what § 16913(d) authorizes the Attorney General to do. The Eighth and Tenth Circuits have held that the statute was retroactively applicable from the time of its enactment because § 16913(d) did not authorize the Attorney General to regulate the *applicability* of SORNA to pre-enactment sex offenders, but only to create procedures for *notifying* them of their obligations under the new law. *See Hinckley*, 550 F.3d at 929–35; *id*. at 940–49 (Gorsuch, J., concurring); *May*, 535 F.3d at 915–19. The Fourth and Eleventh Circuits, in contrast, have held that the Attorney General had the sole authority to determine SORNA's retroactivity, and that therefore the statute could not be applied retroactively before the promulgation of the interim regulation.[8] *See United States v. Hatcher*, 560 F.3d 222, 226–29 (4th Cir. 2008); *United States v. Madera*, 528 F.3d 852, 857–59 (11th Cir. 2008) (per curiam).

We need not decide that question here, however, because even assuming *arguendo* that Whaley's interpretation is correct and that the statute delegates broad authority to the Attorney General to determine the retroactive applicability to SORNA, that delegation would be permissible under the nondelegation doctrine.

The nondelegation doctrine provides that "Congress generally cannot

---

[7] The Attorney General published interim regulations on February 28, 2007. *See* 28 C.F.R. § 72 (2007). The regulations state that SORNA applies "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act," and make no exception for the period prior to the issuance of the interim regulations. *Id.* § 72.3.

[8] Whaley was charged with failure to register after the interim regulation on retroactivity was published.

14

delegate its legislative power to another branch." *United States v. Mistretta*, 488 U.S. 361, 372 (1989). However, some amount of delegation is unavoidable, and the limits on delegation are frequently stated, but rarely invoked: the Supreme Court has not struck down a statute on nondelegation grounds since 1935. *See Panama Ref. Co. v. Ryan*, 293 U.S. 388 (1935); *ALA Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). The modern test is whether Congress has provided an "intelligible principle" to guide the agency's regulations. *See Mistretta*, 488 U.S. at 372; *see also Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946) (stating that delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority"). The intelligible principle can be broad. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414 (1944) (upholding a delegation to fix commodity prices that are "generally fair and equitable and will effectuate the purposes of this Act"); *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190 (1943) (upholding a delegation to regulate in the "public interest").

The delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of permissible delegation. SORNA's statement of purpose, to "establish[] a comprehensive national system" of sex offender registration to "protect the public from sex offenders and offenders against children," 42 U.S.C. § 16901, is an intelligible principle that guides the Attorney General in exercising his discretion. Moreover, the authority delegated is relatively small. *See Ambert*, 561 F.3d at 1214 ("Congress made virtually every legislative determination in enacting SORNA, which has the effect of constricting the Attorney General's discretion to a narrow and defined category."). We therefore reject Whaley's nondelegation challenge to

15

SORNA.

**IV**

For the foregoing reasons, the judgment of the district court is AFFIRMED.