# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 15, 2011

No. 08-51185

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANTHONY JAMES KEBODEAUX, also known as Anthony Kebodeaux,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:

Defendant, Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intra-state change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A) because that provision regulates purely intra-state activities, rather than any aspect of Congress's proper domain of interstate commerce. We conclude that § 2250(a)(2)(A) is constitutional.

No. 08-51185

## BACKGROUND

In 1999, Kebodeaux, a twenty-one-year-old member of the United States Air Force, was convicted under Article 120 of the Uniform Code of Military Justice, 10 U.S.C. § 920, of Carnal Knowledge With a Child, and sentenced to three months of confinement and a bad conduct discharge. The victim was a fifteen-year-old with whom Kebodeaux had sexual relations to which the victim assented in fact though she lacked the legal ability to consent. Kebodeaux served his sentence and was dishonorably discharged from the military. No term of supervised release was imposed.

On August 8, 2007, Kebodeaux registered as a sex offender in El Paso, Texas, and reported his residence at a street address in that city, in compliance with SORNA. *See* 42 U.S.C. § 16913. On January 24, 2008, El Paso police were unable to locate Kebodeaux at that address. On March 12, 2008, Kebodeaux was found and arrested in San Antonio, Texas. Kebodeaux admits that he did not update his registration or otherwise inform authorities of his relocation from El Paso to San Antonio as required by SORNA.[1] On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violating of SORNA, 18 U.S.C. § 2250(a).

Section 2250(a) makes it a crime punishable by up to ten years imprisonment if a person who:

---

[1] 42 U.S.C. § 16913(a) provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence." 42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register."

No. 08-51185

(1) is required to register under [SORNA];

(2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by [SORNA].

Thus, "Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration [and updating] requirements: any person who is a sex offender 'by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, § 2250(a)(2)(A), and any other person required to register under SORNA who 'travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,' § 2250(a)(2)(B)." *Carr v. United States*, 130 S. Ct. 2229, 2238 (2010) (alteration removed). Accordingly, "[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability." *Id.* at 2235 n.3 (citing § 2250(a)(2)(A)).

In response to Kebodeaux's pre-trial filings, the Government stated that it was charging Kebodeaux solely because he fell under 18 U.S.C. § 2250(a)(2)(A), as he qualified as a sex offender "for the purpose of" SORNA "by reason of a conviction under . . . the Uniform Code of Military Justice" and knowingly failed to update his registration when he moved intra-state, within Texas. The Government also stated that it was not charging Kebodeaux under § 2250(a)(2)(B), for having traveled in interstate or foreign commerce or having entered an Indian reservation and knowingly having failed to update his registration. After a bench trial on the stipulated facts described above, Kebodeaux was convicted and subsequently sentenced to twelve months and one

No. 08-51185

day of imprisonment, with a five-year term of supervised release. Kebodeaux timely appeals the constitutionality of his conviction and sentence.

## DISCUSSION

We review challenges to the constitutionality of a conviction *de novo*. *United States v. Whaley*, 577 F.3d 254, 256 (5th Cir. 2009).

### I.

Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)'s punishment of a federal sex offender for knowingly failing to update his registration after an intra-state relocation. He concedes the constitutional validity of the balance of SORNA's provisions.

Under § 2250(a)(2)(B), SORNA makes it a federal offense for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress's power to regulate the channels of, and persons in, interstate commerce.[2] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A), in isolation, is unconstitutional because it is an invalid attempt by Congress to regulate intrastate activities, rather than interstate commerce.

Kebodeaux's argument ignores the fact that § 2250(a)(2)(A) does not require the "interstate commerce" jurisdictional hook. That section expressly deals with persons convicted under federal sex offender statutes. Federal sex offender statutes themselves are promulgated under various provisions of Article I. *See, e.g.,* 18 U.S.C. § 2243(a) (criminalizing "sexual abuse of a minor or ward"

---

[2] *Whaley*, 577 F.3d at 258; *accord United States v. George*, — F.3d —, 2010 WL 4291497, at *4 (9th Cir. 2010); *United States v. Guzman*, 591 F.3d 83, 90 (2d Cir.), *cert. denied*, 130 S. Ct. 3487 (2010); *United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

in United States "special maritime and territorial jurisdiction", pursuant to Congresses power Article 1 power "[t]o define and punish . . . felonies committed on the high seas"). Here, Congress has the right to criminalize sexual abuse of a minor by a member of the military, pursuant to its power to regulate the military under Article 1, Section 8, Clauses 14 and 16 of the United States Constitution. Kebodeaux does not suggest that Congress lacked the authority to criminalize the conduct of which he was convicted or that the statute under which he was convicted was unconstitutional. The next question becomes whether Congress's power over federal sex offenses stretches far enough to encompass a registration requirement. The Necessary and Proper Clause of the Constitution gives Congress the power "[t]o make all laws which shall be necessary and proper for carrying into Execution" the enumerated powers. U.S. CONST., art. 1, § 8, cl. 18. Specifically, in respect to effectuating the Commerce Clause power, the Supreme Court has explained that the Necessary and Proper Clause provides Congress the authority to enact "comprehensive legislation to regulate the interstate market" even when that "regulation ensnares some purely intrastate activity." *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). In *Raich,* the Court held that under the Controlled Substances Act ("CSA"), through the Necessary and Proper Clause power to effectuate the Commerce Clause authority, Congress could regulate the intra-state production of marijuana as "Congress could have rationally concluded that the aggregate impact on the national market of all the" regulated intra-state activities "is unquestionably substantial." 545 U.S. at 32.

The Supreme Court recently addressed Congress's ability under Article 1, Section 8, Clause 18 to promulgate statutes relating to federal crimes in *United States v. Comstock*, 130 S. Ct. 1949 (2010). In that case, the Supreme Court held that the Necessary and Proper Clause empowers Congress to enact legislation that is "reasonably adapted" to effectuating an enumerated power. *Id*. at 1957,

1961. Specifically, in *Comstock*, the Supreme Court upheld a federal civil-commitment statute that "authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released[,] 18 U.S.C. § 4248." *Id.* at 1954. The Court concluded that Congress had such power based upon the Necessary and Proper Clause's authorization to implement the Commerce Clause and other enumerated powers. It explained that to determine whether a statute was a constitutional exercise of the Necessary and Proper Clause power "we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power." *Id.* at 1956 (emphasis added); *see also id.* at 1962 (stating that the statute is constitutional under the Clause if it "represent[s] a rational means for implementing a constitutional grant of legislative authority"). The civil-commitment statute was constitutional, therefore, as it was "'*reasonably adapted*' to Congress's power to act as a responsible federal custodian (a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority," including the Commerce Clause power. *Id.* at 1961, 1964 (citations omitted) (quoting *United States v. Darby*, 312 U.S. 100, 121 (1941)) (emphasis added).

In *Comstock,* the Court began its analysis of the statute by "assum[ing] for argument's sake that the Federal Constitution would permit a State to enact this statute." With that assumption, the Necessary and Proper Clause question then is "whether the Federal Government, exercising its enumerated powers, may enact such a statute as well." 130 S. Ct. at 1956. Analyzed this way, Kebodeaux's suggestion that the fact that he no longer is in custody or on supervised release renders the federal government powerless over him is inapposite. No one challenges that a state may require registration of a state sex offender who has been released from custody and parole. So, too, may the

No. 08-51185

federal government require a federal sex offender to register even if he is no longer in custody or on supervised release.

The *Comstock* Court described five factors it considered in holding that the civil-commitment statute was constitutional: "(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in [legislating in relation to 'prison-related mental health statutes,' like the one at issue in *Comstock*], (3) the sound reasons for the statute's enactment . . . , (4) the statute's accommodation of state interests, and (5) the statute's narrow scope." *Id.* at 1965.

These factors implement the notion that Congress may pass laws rationally related or reasonably adapted to the effectuation of enumerated powers. For example, in discussing the first factor, the Court wrote: "We have . . . made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.* at 1956. Regarding the second factor, the Court explained that the history of federal involvement in an area could not on its own "demonstrate a statute's constitutionality"; instead, the Court stated it was a means of analyzing "the reasonableness of the relation between the new statute and pre-existing federal interests." *Id.* at 1958. Similarly, in expounding the third factor, the Court stated that a court should find the reasons for a statute sound if they "satisf[y] the Constitution's insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority." *Id.* at 1962.

The Eleventh Circuit has construed *Comstock* as holding that a statute that is "rationally related" or "reasonably adapted" to an enumerated power is a constitutional expression of the Necessary and Proper Clause power. *See United States v. Belfast*, 611 F.3d 783, 804 (11th Cir. 2010) (stating that

7

No. 08-51185

*Comstock* holds that to determine whether "the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power" (quoting *Comstock*, 130 S. Ct. at 1956) (emphasis in original) (internal quotation marks omitted).

Reviewing the *Comstock* factors in light of the Court's analysis, we conclude that the SORNA registration requirement for registration of federal sex offenders is rationally related to the original goals of the criminal statutes under which persons such as Kebodeaux were convicted. We conclude that interstate travel does not have to be part of the analysis.

## CONCLUSION

Accordingly, we conclude that § 2250(a)(2)(A)'s application to intra-state violations of SORNA by sex offenders convicted under federal law is constitutional. For these reasons, the judgment of the district court is AFFIRMED.

No. 08-51185

DENNIS, Circuit Judge, concurring in the judgment and assigning reasons:

Defendant Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intra-state change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A) because that provision regulates purely intra-state activities, rather than any aspect of Congress's proper domain of interstate commerce. I conclude, however, that § 2250(a)(2)(A) is constitutional because it is not a stand-alone statute, but is part of SORNA and necessary to make SORNA effective in regulating the channels of, and persons in, interstate commerce.

Under § 2250(a)(2)(B), SORNA makes it a federal offense for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress's power to regulate the channels of, and persons in, interstate commerce.[1] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A), in isolation, is unconstitutional because it is an invalid attempt by Congress to regulate intra-state activities, rather than interstate commerce.

Kebodeaux's challenge is without merit because § 2250(a)(2)(A) is an integral part of SORNA, rather than a stand-alone provision, and, as such, it is a constitutional regulation of intra-state activities that is necessary and proper

---

[1] *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009); *accord United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010); *United States v. Gould*, 568 F.3d 459, 470-72 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210-11 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 921-22 (8th Cir. 2008).

to make § 2250(a)(2)(B) effective as a regulation of interstate commerce. As structured, SORNA recognizes that "'every state ha[s] enacted' some type of [sex offender] registration system"[2] and that "Congress . . . conditioned certain federal funds on States' adoption of 'criminal penalties' on any person 'required to register under a State program who knowingly fails to so register and keep such registration current.'"[3] In this manner, SORNA gave "the States primary responsibility for supervising and ensuring compliance among state sex offenders."[4] Congress did not delegate to the states, however, the additional responsibility of prosecuting sex offenders convicted under federal law who fail to update their registrations after in-state residence changes. Rather, SORNA makes such an intra-state re-registration failure a federal offense amenable to prosecution by the federal government. Section 2250(a)(2)(A) helps to make SORNA's regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders' undocumented, intra-state residence changes, there would no deterrence to their moving intra-state without re-registering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.

---

[2] *Carr v. United States*, 130 S. Ct. 2229, 2239 n.7 (2010) (quoting *Smith v. Doe*, 538 U.S. 84, 90 (2003)) (alteration in original omitted).

[3] *Id.* at 2238-39 (quoting Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. 103-322, tit. XVII, § 170101(c), 108 Stat. 2041 (1994), *codified at* 42 U.S.C. § 14072(d)) (alteration in original omitted).

[4] *Id.* at 2238.

No. 08-51185

**I.**

On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violating  SORNA, 18 U.S.C. § 2250(a).[5]  Section § 2250(a) makes it a crime punishable by up to ten years imprisonment for:

Whoever—
(1) is required to register under the Sex Offender Registration and Notification Act;
(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act.

Thus, "Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration [and updating]  requirements: any person who is a sex offender 'by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States,' § 2250(a)(2)(A), and any other person required to register under SORNA who 'travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,' § 2250(a)(2)(B)." *Carr*, 130 S. Ct. at 2238

---

[5] 42 U.S.C. § 16913(a) requires, "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence." 42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register."

No. 08-51185

(alteration in original omitted). Accordingly, "[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability." *Id.* at 2235 n.3 (citing § 2250(a)(2)(A)).

Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)'s punishment of a federal sex offender for knowingly failing to update his registration after an intra-state relocation. He concedes the constitutional validity of the balance of SORNA's provisions.

## II.

Yet, as the Supreme Court recently explained in *Carr v. United States*—holding that "[l]iability under § 2250[(a)(2)(B)] . . . cannot be predicated on pre-SORNA travel," 130 S. Ct. at 2233—"Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in [the] broader statutory scheme" of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, which was "enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks" of sex offender registration systems. *Carr*, 130 S. Ct. at 2240 (citing 42 U.S.C. § 16901 for the proposition that "Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders" (alteration in original)).

Accordingly, in *Carr*, the Supreme Court described how SORNA's various sections work together to further the joint state-federal goals of comprehensive identification and registration of all state and federal sex offenders and punishing those who knowingly avoid updating their registrations:

> Among its many provisions, SORNA instructs States to maintain sex-offender registries that compile an array of information about sex offenders, [42 U.S.C.] § 16914; to make this information publicly available online, § 16918; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex-offender registry, §§ 16919-16921; and to "provide a criminal penalty that includes a maximum term of

12

> imprisonment that is greater than 1 year for the failure of a sex
> offender to comply with the requirements of this subchapter,"
> § 16913(e). Sex offenders, in turn, are required to "register, and keep
> the registration current, in each jurisdiction where the offender
> resides, where the offender is an employee, and where the offender
> is a student," § 16913(a), and to appear in person periodically to
> "allow the jurisdiction to take a current photograph, and verify the
> information in each registry in which that offender is required to be
> registered," § 16916.

*Id.* at 2240-41. The Court continued, "By facilitating the collection of sex-offender information and its dissemination among jurisdictions, these provisions, not § 2250, stand at the center of Congress' effort to account for missing sex offenders." *Id.* at 2241. Therefore, 28 U.S.C. § 2250(a)(2)(A), a subsection of that same statute, clearly was not enacted as a stand-alone provision, but rather as a complement to the Act's other provisions. *Cf. Whaley*, 577 F.3d at 259 (citing *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008)) (stating that § 2250 is "complementary" to SORNA's registration requirements in § 16913).

## III.

The Necessary and Proper Clause of the Constitution gives Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" the enumerated powers. U.S. Const. art. 1, § 8, cl. 18. Specifically, in respect to effectuating the Commerce Clause power, the Supreme Court has explained that the Necessary and Proper Clause provides Congress the authority to enact "comprehensive legislation to regulate the interstate market" even when that "regulation ensnares some purely intrastate activity." *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). In *Raich,* the Court held that under the Controlled Substances Act ("CSA"), through the Necessary and Proper Clause power to effectuate the Commerce Clause authority, Congress could regulate the intra-state production of marijuana as "Congress could have rationally concluded that

No. 08-51185

the aggregate impact on the national market of all the" regulated intra-state activities "is unquestionably substantial." 545 U.S. at 31.

In *Raich*, Justice Scalia concurred in the judgment and wrote separately to explain that, although he "agree[d] with the Court's holding that the [CSA] may validly be applied to respondents' [intra-state] cultivation, distribution, and possession of marijuana for personal, medicinal use," his "understanding of the doctrinal foundation on which that holding rests is, if not inconsistent with that of the Court, at least more nuanced." *Id.* at 33 (Scalia, J., concurring in the judgment). He explained that the combination of the Necessary and Proper Clause power and the Commerce Clause authority means that "Congress's authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed against economic activities that have a substantial effect on interstate commerce. . . . [Congress can] regulate[] [non-economic activities] as 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Id.* at 36 (quoting *United States v. Lopez*, 514 U.S. 549, 561 (1995)). "The relevant question is simply whether the means chosen are '*reasonably adapted*' to the attainment of a legitimate end under the commerce power." *Id.* at 37 (emphasis added) (citing *United States v. Darby*, 312 U.S. 100, 121 (1941)).

Justice Scalia based his interpretation on a long line of Supreme Court precedents. *Id.* at 34 (citing *Katzenbach v. McClung*, 379 U.S. 294, 301-02, (1964); *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119 (1942); *Shreveport Rate Cases*, 234 U.S. 342, 353 (1914); *United States v. E.C. Knight Co.*, 156 U.S. 1, 39-40 (1895) (Harlan, J., dissenting); *United States v. Coombs*, 37 U.S. (12 Pet.) 72, 78 (1838)). Moreover, he explained, "[W]e implicitly acknowledged in *Lopez* . . . Congress's authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed

14

against economic activities that have a substantial effect on interstate commerce. Though the conduct in *Lopez* was not economic, the Court nevertheless recognized that it could be regulated as 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.' 514 U.S. at 561." *Id.* at 36. "This statement referred to those cases permitting the regulation of intrastate activities 'which in a substantial way interfere with or obstruct the exercise of the granted power.'" *Id.* (quoting *Wrightwood Dairy Co.*, 315 U.S. at 119) (citing *Darby*, 312 U.S. at 118-19; *Shreveport Rate Cases*, 234 U.S. at 353). "As the Court put it in *Wrightwood Dairy*, where Congress has the authority to enact a regulation of interstate commerce, 'it possesses every power needed to make that regulation effective.' 315 U.S. at 118-19." *Id.* "Although this power 'to make . . . regulation effective' commonly overlaps with the authority to regulate economic activities that substantially affect interstate commerce, and may in some cases have been confused with that authority, the two are distinct. The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the intrastate activity does not itself 'substantially affect' interstate commerce. Moreover, as the passage from *Lopez* quoted above suggests, Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37 (alteration in original) (footnote omitted) (citing *Lopez*, 514 U.S. at 561). "The relevant question is simply whether the means chosen are '*reasonably adapted*' to the attainment of a legitimate end under the commerce power." *Id.* (emphasis added) (quoting *Darby*, 312 U.S. at 121).

In *Comstock v. United States*, 130 S. Ct. 1949 (2010), the majority of the Supreme Court confirmed Justice Scalia's view that the Necessary and Proper Clause empowers Congress to enact legislation that is "reasonably adapted" to effectuating an enumerated power. Specifically, in *Comstock*, the Supreme Court

No. 08-51185

upheld a federal civil-commitment statute that "authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released, 18 U.S.C. § 4248." 130 S. Ct. at 1954. The Court concluded that Congress had such power based upon the Necessary and Proper Clause's authorization to implement the Commerce Clause and other enumerated powers. It explained that to determine whether a statute was a constitutional exercise of the Necessary and Proper Clause power "we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power." *Id.* at 1956 (emphasis added); *see also id.* at 1962 (stating that the statute is constitutional under the Clause if it "represent[s] a rational means for implementing a constitutional grant of legislative authority"). The civil-commitment statute was constitutional, therefore, as it was "'*reasonably adapted*' to Congress's power to act as a responsible federal custodian[,] a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority," including the Commerce Clause power. *Id.* at 1961, 1964  (emphasis added) (citations omitted) (quoting *Darby*, 312 U.S. at 121).

In *Comstock,* the majority described five factors it considered in holding that the civil-commitment statute was constitutional: "(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in [legislating in relation to'prison-related mental health statutes,' like the one at issue in *Comstock*, *id*. at 1958], (3) the sound reasons for the statute's enactment . . ., (4) the statute's accommodation of state interests, and (5) the statute's narrow scope." *Id.* at 1965. However, the majority opinion demonstrates that these factors are merely ways of rephrasing or implementing the notion that Congress may pass laws rationally related or reasonably adapted to the effectuation of enumerated powers. For example, in discussing the first factor,

16

No. 08-51185

the Court wrote: "We have . . . made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.* at 1956. Regarding the second factor, the Court explained that the history of federal involvement in an area could not on its own "demonstrate a statute's constitutionality"; instead, the Court stated that it was a means of analyzing "the reasonableness of the relation between the new statute and pre-existing federal interests." *Id.* at 1958. Similarly, in expounding the third factor, the Court stated that a court should find the reasons for a statute sound if they "satisf[y] the Constitution's insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority." *Id.* at 1962.

Other jurists and commentators have also read the *Comstock* majority as holding that a statute that is "rationally related" or "reasonably adapted" to an enumerated power is a constitutional expression of the Necessary and Proper Clause power. *See id.* at 1966 (Kennedy, J., concurring in the judgment) ("The Court concludes that, when determining whether Congress has the authority to enact a specific law under the Necessary and Proper Clause, we look 'to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.'" (quoting *id.* at 1956 (majority opinion))); *United States v. Belfast*, 611 F.3d 783, 804 (11th Cir. 2010) (stating that *Comstock* holds that to determine whether "the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is *rationally related* to the implementation of a constitutionally enumerated power" (quoting *Comstock*, 130 S. Ct. at 1956) (internal quotation marks omitted)); *Al-Bihani v. Obama*, 619 F.3d 1, 25 n.11 (D.C. Cir. 2010) (Kavanaugh, J.,

17

concurring in the denial of rehearing en banc) (suggesting the same reading of *Comstock*); *Virginia ex rel. Cuccinelli v. Sebelius*, 702 F. Supp. 2d 598, 611 (E.D. Va. 2010) ("[T]he relevant inquiry is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or under other powers that the Constitution grants Congress the authority to implement." (alteration in original) (quoting *Comstock*, 130 S. Ct. at 1957) (internal quotation marks omitted));[6] 16A Am. Jur. 2d *Constitutional Law* § 343 (2010) ("In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, the court looks to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." (citing *Comstock*, 130 S. Ct. 1949)); Robert R. Harrison*, Health Care Reform in the Federal Courts*, 57 Fed. Law., Sept.–2010, at 52, 56 ("In *Comstock*, the Court noted that the scope of the Necessary and Proper Clause is limited by the inquiry 'whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or other powers that the Constitution grants Congress the authority to implement.'" (quoting *Comstock*, 130 S. Ct. at 1956-57)).[7]

---

[6] *See also Gill v. Office of Pers. Mgmt.*, 699 F. Supp. 2d 374, 393 (D. Mass. 2010) (stating that the second *Comstock* factor, history, is only a proxy to determine "the reasonableness of the relation between the new statute and pre-existing federal interests" (quoting *Comstock*, 130 S. Ct. at 1952) (internal quotation marks omitted)); *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 698 F. Supp. 2d 234, 250 (D. Mass. 2010) (same).

[7] *See also* 16A Am. Jur. 2d *Constitutional Law* § 107 (2010) (stating that the second *Comstock* factor, history, is a proxy for determining "the reasonableness of the relation between the new statute and pre-existing federal interests"); Michael C. Dorf, *The Supreme Court's Decision About Sexually Dangerous Federal Prisoners: Could It Hold the Key to the Constitutionality of the Individual Mandate To Buy Health Insurance?* Findlaw.com (May 19, 2010)*,* http://writ.news.findlaw.com/dorf/20100519.html ("[T]he seven Justices in the [*Comstock*] majority [] were fully comfortable with federal power extending to areas that are not independently regulable, so long as regulation in those areas is reasonably related to regulation that is within the scope of congressional power.").

No. 08-51185

**IV.**

Accordingly, I conclude that § 2250(a)(2)(A)'s application to intra-state violations of SORNA by sex offenders convicted under federal law is necessary and proper to, that is, rationally related and reasonably adapted to, § 2250(a)'s other subsection, § 2250(a)(2)(B), which we have already upheld as a proper exercise of the Commerce Clause power. *Whaley*, 577 F.3d at 258. For these reasons, I agree that the judgment of the district court must be affirmed.

Although I agree with the majority in affirming the judgment of the district court, I cannot join the majority opinion because it departs from the doctrinal framework established by the Supreme Court for analyzing commerce clause legislation such as SORNA and its provisions that are at issue in the present case. Contrary to the clear teachings of the Supreme Court in *Carr* and this court in *Whaley*, the majority interprets § 2250(a)(2)(A) as a stand-alone statute that is rationally related only to a pre-existing military penal statute, rather than as a necessary and integral part of the commerce-clause-based SORNA. By trying to justify SORNA's § 2250(a)(2)(A) as rationally related to the military law under which Kebodeaux was convicted and imprisoned, rather than reasonably adapted to SORNA's regulation of interstate commerce, with which §2250(a)(2)(A) was enacted and made an integral part, the majority relies upon an altogether different legislative power that is, at best, only tangentially related to SORNA's registration requirement. Consequently, I believe that the majority has fallen into serious error in reading *Comstock* to arrogate vast revisionary powers to judges, allowing them to uphold as necessary and proper any piece of legislation, regardless of the vehicle by which Congress enacted it, so long as the judges can in retrospect see a rational relationship between that law and some enumerated power.

19