# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2011

No. 09-51108

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LEROY LEE BYRD,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:08-CR-1567-1

Before CLEMENT, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant Leroy Lee Byrd was indicted on one count of failure to register as a sex offender in violation of 18 U.S.C. § 2250. The district court denied Byrd's motion to dismiss the indictment on multiple grounds, and conducted a bench trial on stipulated facts. After denying Byrd's post-trial motion for a judgment of acquittal, the district court found Byrd guilty and subsequently sentenced him to 24 months' imprisonment. Byrd timely appealed. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-51108

## FACTS AND PROCEEDINGS

The stipulated facts reveal the following: Byrd is a two-time sex offender. In 1979, he was convicted of two counts of Attempted Criminal Sexual Penetration in New Mexico. In 1989, he was convicted of Rape in the Third Degree in Washington. Byrd last registered as a sex offender with the Arizona Department of Public Safety in 2004. When he did so, he acknowledged, *inter alia*, that he was required to register as a sex offender for life, to notify the Sheriff of the county in which he is registered within 72 hours of moving out of the county, and that if he relocated to another state, he must comply with the registration requirements of that state.

Between July 3, 2007, and January 8, 2008, Byrd traveled, at least twice, across state lines, from New Mexico to Texas. On January 10, 2008, Byrd rented an apartment in El Paso. On February 3, 2008, Byrd was arrested by the El Paso Police Department ("EPPD"), who determined that Byrd had not registered with the EPPD or any other agency in Texas. Subsequent investigation revealed that Byrd was also not registered in New Mexico and had not updated his sex offender registration in Arizona since initially registering in 2004.

After a bench trial on the aforementioned stipulated facts, Byrd filed a motion for judgment of acquittal, arguing that the government failed to prove that Byrd knowingly failed to register under SORNA. The district court denied this motion, found Byrd guilty, and later sentenced him to 24 months' imprisonment. Byrd timely appealed.

## DISCUSSION

### I.    SORNA

The Adam Walsh Child Protection and Safety Act of 2006 became law on July 27, 2006. Title I of the Act includes the Sex Offender Registration and Notification Act ("SORNA"), which "establishes a comprehensive national system for the registration of [sex] offenders." Pub. L. No. 109-248, §§ 101-155, 120 Stat.

2

No. 09-51108

587, 590-611 (2006). SORNA requires all sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).

The rules for initial and updated registration are as follows:

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913.

SORNA provides a federal criminal penalty for traveling in interstate commerce and failing to register or update a registration:

> (a) In general – Whoever – (1) is required to register under the Sex Offender Registration and Notification Act . . . (2)(B) travels in interstate or foreign commerce . . .; and (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act . . . shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

Pursuant to 42 U.S.C. § 16913(d), Congress left to the Attorney General the discretion "to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006. . . ." *Id.* Effective February 28, 2007, the Attorney General announced an interim rule that applied SORNA's requirements "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 C.F.R. § 72.3 (2007). The Attorney General stated that the "immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements . . . to sex offenders whose predicate convictions predate the enactment of SORNA." 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007).

The Attorney General invoked the good cause exception in the Administrative Procedure Act ("APA") and published § 72.3 without allowing for notice and public comment or a thirty-day advance publication, requirements otherwise mandated by the APA. 5 U.S.C. § 553(b)(B), (d)(3). The Attorney General later followed up with more detailed proposed guidelines that were subject to notice and public comment. *See* 72 Fed. Reg. 30210 (May 30, 2007). This proposal included a subsection on the applicability of SORNA to pre-enactment offenders, noting that the Attorney General had addressed this

No. 09-51108

application in its earlier rulemaking. The final regulations on the interpretation and implementation of SORNA became effective on July 2, 2008. *See* 73 Fed. Reg. 38030 (July 2, 2008).

We review Byrd's legal and constitutional challenges *de novo. United States v. Delgado-Nunez*, 295 F.3d 494, 496 (5th Cir. 2002). He also challenges the sufficiency of the evidence against him. The standard for reviewing that claim after a bench trial is "whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond reasonable doubt that the defendant is guilty." *United States v. Turner*, 319 F.3d 716, 720 (5th Cir. 2003) (quotations omitted).

## II.   *United States v. Carr* **and the Nexus Required between an Offender's Interstate Travel and his Subsequent Failure to Register**

On June 1, 2010, after briefing in this appeal was substantially complete, the Supreme Court issued *Carr v. United States,* 130 S. Ct. 2229 (2010). In *Carr*, the Court held that liability under § 2250 "cannot be predicated on pre-SORNA travel." *Id.* at 2232. The Court also stated, in dicta, that "[a] sequential reading [of the statute's elements] . . . helps to assure a nexus between a defendant's interstate travel and his failure to register as a sex offender." *Id.* at 2235. In dissent, Justice Alito agreed "with the Court that there is a good argument that § 2250(a) should not be read to apply to . . . a case, where there is little if any connection between the offender's prior interstate movement and his subsequent failure to register." *Id.* at 2248 (Alito, J. dissenting).

We solicited additional briefing from the parties on whether, in light of *Carr*, § 2250 requires the nexus alluded to by the Court and whether § 2250 requires the government to prove that the purpose of a defendant's interstate travel was to avoid, evade, or elude a state's registration requirements. We hold that *Carr* requires that the elements of the SORNA statute must be satisfied in

5

sequence: an offender must (1) be required by SORNA to register; then (2) travel in interstate or foreign commerce; and then (3) knowingly fail to register or update a registration as required by SORNA. We decline to read into the statute a requirement that the government must prove that the purpose of an offender's interstate travel is to avoid, evade, or elude a state's registration requirement.

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). The plain language of § 2250(a) does not require that the government prove that an offender travel interstate with the specific intent to avoid a registration requirement. "Once a person becomes subject to SORNA's registration requirements, which can occur only after the statute's effective date, that person can be convicted under § 2250 if he *thereafter* travels and *then* fails to register." *Carr*, 130 S. Ct. at 2236 (emphasis added). To determine when an offender violates § 2250 by "fail[ing] to register or update a registration as required by [SORNA]," we look to 42 U.S.C. § 16913, the section of SORNA that defines "registry requirements for sex offenders." Relevant to this case is § 16913(c), which specifies when a sex offender who is already registered must update his registration, and the procedure that such an offender must follow:

> A sex offender shall, not later than 3 business days after *each change of name, residence, employment, or student status*, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913(c) (emphasis added). Thus, an offender like Byrd who is already registered as a sex offender is not subject to liability under § 2250 for failure to update his registration unless he travels interstate and  thereafter

6

changes his "name, residence, employment, or student status" without notifying the authorities in the manner SORNA requires. *Id*.

The stipulated facts reveal that Byrd was a sex offender subject to SORNA's requirements. Byrd traveled between New Mexico and Texas at least twice between July 3, 2007 and January 8, 2008. On January 10, 2008, Byrd rented an apartment, a residence change that triggers a requirement to notify the authorities under § 16913. After Byrd was arrested on unrelated charges, subsequent investigation revealed that Byrd had not notified the authorities as § 16913 requires. Section 2250's elements have been satisfied, in sequence. The government is not required to prove that Byrd's interstate travel was for the specific purpose of evading a state's registration requirement in order to obtain a conviction.

## III.   Due Process, Commerce Clause, and Sufficiency of the Evidence Challenges

Byrd asserts five challenges to his conviction under SORNA, three of which are foreclosed by our caselaw. Byrd first asserts that because he never received actual notice of his duty to register under SORNA, he was denied due process under the Fifth Amendment. Byrd stipulated to knowledge of his obligation to register as a sex offender in Arizona but argues that he was never directly notified of his federal requirement under SORNA. He further argues that Congress lacked the authority to enact SORNA under the Commerce Clause. As Byrd acknowledges, both of these arguments are foreclosed by *United States v. Whaley*. 577 F.3d 254, 260–64 (5th Cir. 2009) (finding that due process was satisfied through Johnson's knowledge of his duty to register under state law and that SORNA is a valid exercise of Congressional power under the Commerce Clause).

Next, Byrd restyles his argument that he did not receive actual notice of his duty to register under SORNA as a sufficiency-of-the-evidence challenge. As

a panel of this court recently stated, the argument "that the Government failed to show that [Byrd] knowingly failed to register as a sex offender or update his registration because it failed to show that he had knowledge of the requirements of SORNA . . . is foreclosed." *United States v. Ross*, No. 09-50890, 2010 U.S. App. LEXIS 13972, at *2 (5th Cir. July 8, 2010) (per curiam) (unpublished) (citing *United States v. Heth*, 596 F.3d 255, 258 (5th Cir. 2010); *Whaley,* 577 F.3d at 262 n.6). *See also United States v. Knezek*, No. 09-50438, 2010 U.S. App. LEXIS 8585, at *3 (5th Cir. Apr. 26, 2010) (per curiam) (unpublished) ("As the government was not required to prove Knezek knew that he violated SORNA, and as the evidence presented at trial supported a finding that Knezek knowingly failed to register, his challenge to the sufficiency of the evidence is without merit."); *Heth*, 596 F.3d at 258 ("Heth had the requisite notice of [his duty to register] under Colorado law, and there is thus sufficient evidence that he knowingly failed to register as a sex offender."). Accordingly, we reject these challenges as foreclosed.

## IV.   APA Challenge

Byrd also argues that the Attorney General violated the APA by promulgating § 72.3 without notice and comment and without publishing the rule thirty days prior to its effective date. He contends that, although the APA allows an agency to dispense with both notice and comment and the thirty-day waiting period requirement for good cause, 5 U.S.C. § 553(b)(B) & (d)(3), the Attorney General lacked good cause to do so in this situation. In *United States v. Johnson*, No. 09-60823, ____ F.3d _____ (5th Cir. Feb. 4, 2011), the Court agreed with these contentions.[1] The Court also, however, held that both APA

---

[1] The Supreme Court recently granted a writ of certiorari on the question of whether a petitioner "ha[s] standing under [SORNA] to raise claims concerning the Attorney General's interim rule." Petition for Writ of Certiorari at i, *United States v. Reynolds*, No. 10-6549 (U.S. filed Sept. 14, 2010), *appeal from* 380 F. App'x 125 (3d Cir. 2010), *cert. granted* 79 U.S.L.W. 3248 (2011). In *Johnson*, this court held that appellants raising challenges to the Attorney

violations were "harmless in the particular circumstances of th[at] case." *Id.* at
*31.  For the reasons set forth in *Johnson*, we hold that the Attorney General's
APA violations were also harmless error under the circumstances presented by
Byrd.

Like the defendant in *Johnson*, Byrd was not prejudiced by the Attorney
General's failure to comply with the thirty-day waiting period requirement. Had
the Attorney General complied with the thirty-day notice provision when issuing
§ 72.3, the rule would have been effective on March 30, 2007. "If [a convicted sex
offender] engaged in interstate travel and failed to register after that date, his
actions would properly violate the rule regardless of whether the Attorney
General had good cause to bypass the thirty-day notice." *Id.* at *31–32.  In this
case, the stipulated facts upon which Byrd was convicted reveal that he traveled
across state lines "at least two" times "between July 3, 2007 and January 8,
2008." (R. 299.) He was not indicted until February 2008. "Even if the Attorney
General lacked good cause to waive [the thirty-day notice provision in] § 553(d),
[Byrd] was not prejudiced." *Id.* at *32.

Byrd was also not prejudiced by the Attorney General's failure to provide
a notice and public comment period. He neither "proposes comments he would
have made during a comment period nor did he choose to involve himself in the
post-promulgation comment period. [Byrd] does not allege that he participated
in the Attorney General's subsequent rulemaking process that crafted
regulations regarding the more detailed provisions of SORNA, in which the
Attorney General also considered the retroactivity of SORNA, free of APA

---

General's interim rule do have standing under SORNA. No. 09-60823 at *25. Consistent with
this court's usual practice, we resolve Byrd's appeal based on current law. *See, e.g.*, *United
States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008).

error.[2]" *Id*. at *36. Byrd also "had constructive notice that the Attorney General would apply SORNA to pre-enactment offenders when the Attorney General issued notice for those later guidelines in May 2007, before [he] crossed interstate lines and subsequently failed to register." *Id*. "Because the Attorney General's rulemaking process addressed the same issues raised by [Byrd] and because [Byrd] 'makes no showing that the outcome of the process would have differed . . . had notice been at its meticulous best,'" we hold, as in *Johnson*, that "it is clear that the Attorney General's APA violations were harmless error" as applied to Byrd. *Id*. at *37. (citing *Friends of Iwo Jima v. Nat'l. Capital Planning Comm'n*, 176 F.3d 768, 774 (4th Cir. 1999) (Wilkinson, J.)).

## V.    Fundamental Right to Travel

Finally, Byrd contends that SORNA violates his fundamental right to "enter and to leave another state." *Saenz v. Roe,* 526 U.S. 489, 500 (1999). In *Saenz*, the Court described the right to travel as protecting: (1) "the right of a citizen of one State to enter and to leave another State," (2) the "right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) "the right to be treated like other citizens of that State" if one chooses to become a permanent resident. 526 U.S. at 500. In *Shapiro v. Thompson,* the Court "recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which *unreasonably burden or restrict* this movement." 394 U.S. 618, 629 (1969) (emphasis added). Statutes

---

[2] *See* 73 Fed. Reg. 38030, 38036 (July 2, 2008).   In response to comments about retroactivity, the Attorney General stated that "no changes have been made in the final guidelines relating to retroactivity based on comments alleging an adverse effect on sex offenders." *Id.*

that unreasonably burden the right to travel will be struck down unless "necessary to promote a compelling government interest." *Id*. at 634.

Two other circuits have addressed the issue of whether SORNA implicates the fundamental right to travel and both have concluded that it does not. *See United States v. Shenandoah*, 595 F.3d 151, 162 (3d Cir. 2010) ("There is simply no Constitutional violation. Moreover, moving from one jurisdiction to another entails many registration requirements required by law which may cause some inconvenience, but which do not unduly infringe upon any one's right to travel."); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009) ("The requirement to update a registration under SORNA is undoubtedly burdensome; however, the government's interest in protecting others from future sexual offenses and preventing sex offenders from subverting the purpose of the statute is sufficiently weighty to overcome the burden. This statute does not violate Ambert's right to travel.").

We join our sister circuits and hold that SORNA's registration requirements do not implicate the fundamental right to travel of convicted sex offenders because nothing in the statute precludes an offender from "enter[ing] or leav[ing] another state," being "treated as a welcome visitor. . . . in the second State," or being "treated like other citizens of that State" if the offender chooses to permanently relocate. *Saenz*, 526 U.S. at 500. Although Byrd styles his SORNA obligations as a "lifelong, federally imposed, restriction on his right to move from state to state," nothing in SORNA places *any* restriction on Byrd's movement from state to state. Unlike the traditional litigant in right-to-travel cases, Byrd does not argue that he is treated differently than any other person because he is a new or temporary resident in another state or that he is not allowed to enter or leave a state. Instead, Byrd argues that "the only special value of SORNA's punitive provision at the present time is to confer federal jurisdiction over a state violation" and "the restriction SORNA imposes is [not]

No. 09-51108

strictly related to any federal purpose." But the fact that no provision of SORNA "creates any federal penalty for failing to register while remaining in a state," *see Whaley,* 577 F.3d at 260, does not equate to a violation of Byrd's right to travel. SORNA does not burden, much less unreasonably burden, Byrd's fundamental right to travel as defined by the Court in *Saenz.* Accordingly, we reject Byrd's final challenge to his SORNA conviction.

## CONCLUSION

The district court's judgment is AFFIRMED.