**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 25, 2012

Lyle W. Cayce
Clerk

No. 11-50506

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

EUGENE MERRILL BELAIRE, II, also known as Eugene Merrill Belaire,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
(10-CR-2482)

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Defendant Eugene Merrill Belaire, II appeals his criminal conviction under the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a), for failing to comply with the act's registration requirement. Belaire argues that the district court's instructions allowed the jury to convict on a theory of guilt that would not support a conviction. We agree, and accordingly vacate Belaire's conviction and remand for a new trial.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50506

I.

Belaire was convicted of a sex offense in 2004. When he was released from prison he registered as a sex offender in Texas, where he resided and worked. Belaire was required to check in with the probation office every 30 days. He checked in with his registering official in Texas on August 11, 2010. On August 13, he traveled to New York on a one-way ticket to meet a friend, Danielle Perry. On August 25, he was stopped by border patrol in Massena, New York, when re-entering the U.S. from Canada. He was referred to the secondary inspection area because his name was on record in the NCIC data bank. Belaire was traveling with Danielle Perry and two minor females.

Belaire told border patrol agents that the group had attended a Justin Bieber concert in Canada and were returning after an overnight stay. Belaire admitted that he was a registered sex offender, that he had registered in Texas and had not informed Texas authorities of his travel plans. When Officer Weaver asked Belaire where he lived, he responded that he "was living with Ms. Perry in Moria, New York." He told the officer that he had come to New York to rekindle an old flame with a high school sweetheart, and after a few days they had hit it off. Belaire stated that he was going to stay here (in New York) and start a new life with her. The officer asked Belaire if he knew he had to report in New York. Belaire said he didn't think he did unless he was staying permanently. Belaire knew the New York reporting office was in Albany and stated that he had the contact information at home, referring to Moria, New York. When asked about his job situation, Belaire told the officer that he had been recently laid off as an aircraft mechanic in El Paso. He was looking for work in New York, and Perry and her boss were helping him.

Although Belaire told officers he was living with Perry and gave her address on his written declaration for their entry into the United States, he also stated, when asked about his registration obligation, that he hadn't officially

2

No. 11-50506

moved to New York and his belongings were still in Texas. He had not decided when to go back to Texas to retrieve them.

Belaire was found guilty and sentenced to 24 months of imprisonment. He timely appealed.

## II.

The statute under which Belaire was convicted, 18 U.S.C. § 2250, makes it a crime to knowingly fail to register or update a registration as required by the SOTNA.[1] Belaire registered under the act in Texas and the question in this case was whether he failed to timely update his registration. The only registry update required in the act itself is located in 42 U.S.C. § 16913, which requires sex offenders to register and keep their registration current by reporting within 3 business days each change of name, residence, employment, or student status

---

[1] The federal criminal provision for failure to comply with SORNA is contained in 18 U.S.C. § 2250.

**§ 2250.  Failure to register**
(a) In general. Whoever--
     (1) is required to register under the Sex Offender Registration and Notification Act;
     (2)
        (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice [10 USCS §§ 801 et seq.]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
     (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
   (3) **knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act**;

shall be fined under this title or imprisoned not more than 10 years, or both.
     . . .
18 U.S.C. § 2250 (emphasis added).

No. 11-50506

to the appropriate authorities.[2] The case against Belaire was that he changed his residence to Moria, New York without timely reporting the change.

Consistent with the requirements of 42 U.S.C. § 16913, the district court instructed the jury that –

> [A] person cannot be found guilty of failing to register as required by federal law unless he resided in a new state, in this case New York, for at least three days without registering.
> . . .
> Thus, the government must prove that the defendant left the residence listed in the registry with no intention of returning.

However, that instruction was immediately followed by an instruction that authorized a conviction on an alternative theory that Belaire contends is legally incorrect.

> The law also requires a sex offender to register at or provide information about any place in which the sex offender is staying when away from his registered address for seven or more days, including identifying the place and the period of time the sex offender is staying there.

The prospect that a conviction could be based on a violation of the seven day provision was increased by the government's closing argument. The prosecutor argued -

---

[2] Subsection(c) of § 16913 states the requirements for keeping the registration current.

**§ 16913.  Registry requirements for sex offenders**
 (c) Keeping the registration current. A sex offender shall, **not later than 3 business days after each change of name, residence, employment, or student status**, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913 (emphasis added).

No. 11-50506

> The law is very strict on sex offenders, and you've been given the law. They have three days when moving jurisdictions to check in. And if they are going to be gone more than seven days on a vacation or in one place for seven days, they have to check in and they have to tell the registration agency that. The Defendant did none of that.

The government repeated this argument on Belaire's obligation to register if traveling for more than seven days in its rebuttal.

> The Government submits that there is sufficient evidence in this case to convict the Defendant of failing to update his registration as required under the federal law when he left on the 11th or the 13th of August for New York with no intent to return, but much less being gone for more than seven days without returning.

The combination of the jury instructions and the prosecution's argument allowed the jury to convict on Belaire's failure to register his address in Moria, New York where he had been staying for more than seven days.

It is important to differentiate the requirement to report temporary lodging information from the obligation to update residency changes. The obligation to report residency changes within 3 business days is part of SORNA and thus failure to comply can be a violation of 18 U.S.C. § 2250. In contrast, the requirement to provide temporary lodging information is contained in the regulations in a list of information that jurisdictions must require sex offenders to provide. Section 16914 lists information that jurisdictions maintaining the registries must include and includes a catch-all provision in subsection (a)(7), that states that the sex offender shall provide to the registering jurisdiction "Any other information required by the Attorney General." One of the items of "other information" that the Attorney General has required jurisdictions to direct sex offenders to provide is "Temporary Lodging Information."

> The authority under SORNA § 114(a)(7) is accordingly exercised to provide that jurisdictions must require sex offenders to provide information about any place in which the sex offender is staying when away from his residence for seven or more days, including

No. 11-50506

identifying the place and the period of time the sex offender is staying there.

73 FR 38030, 38056.  This requirement does not create an additional basis for criminal liability under § 2250, and the government does not argue that it does. In fact, neither Texas nor New York has implemented these regulations as they relate to their own sex offender registries.

The government counters that the reference to the seven day registration provision was to negate the assertion by Belaire that he was just temporarily visiting New York and had no plans to make New York his permanent residence.  The evidence was arguably probative on the critical issue of whether Belaire had decided to permanently relocate to New York.  However, the court's charge allowed the jury to convict on the theory that Belaire failed to register within seven days of his arrival in New York and the government's argument urged the jury to convict on this legally invalid theory.

We are satisfied that this error was not harmless.

[T]here are two ways to prove the harmlessness of an alternative-theory error. First, as set forth in *Neder v. United States* (which is the most recent of the line of cases cited in *Pulido*), an error is harmless if a court, after a "thorough examination of the record," is able to "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." 527 U.S. at 19. If the defendant "raised evidence sufficient to support a contrary finding," then the error was not harmless. *Id*. Thus, under the so-called *Neder* standard, a reviewing court, "in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to [an acquittal] with respect to the [valid theory of guilt]." *Id*.

Second, as we held in *United States v. Holley*, 23 F.3d 902 (5th Cir. 1994), and *United States v. Saks*, 964 F.2d 1514 (5th Cir. 1992), an alternative-theory error is harmless if the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory.

6

No. 11-50506

*United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011), *cert. denied, 132 S. Ct. 1905 (2012).*

Under the first option, the question is whether it is clear beyond a reasonable doubt that the jury verdict would have been the same absent the error. We find that it would not. The border officials testified that Belaire stated that he originally flew to New York for a visit, and there was no evidence that he had physically moved In addition, even if the jury concluded that Belaire decided at some point to remain in New York, there was no evidence when that decision was made, which decision triggers the three day time period to update the registry. Also, although Belaire was looking for a job in New York, his search had been unsuccessful. A jury could reasonably find that he wanted to move to New York only if he could find work. On the other hand, Belaire had admittedly been in New York and Canada – away from his registered address in Texas – more than seven days without notifying authorities of that fact. Thus, conviction under the invalid theory that he failed to register a visit in excess of seven days was much more likely than under the valid theory that he had decided to permanently relocate to New York and failed to register within three days of that decision.

Under the second option, *Skilling* asks whether the fact findings necessary to support a jury conviction on the invalid seven day temporary stay theory would necessarily support a finding of guilt on the three day change of residence theory. They would not. For these reasons, the error in presenting an invalid theory of conviction to the jury was not harmless.

## III.

For the above reasons, we vacate Belaire's conviction and remand this case to the district court for a new trial.[3]

---

[3] Belaire also argues that Congress lacked authority under the Commerce Clause to enact SORNA; that the SORNA conviction violates his due process rights because he was

No. 11-50506

VACATED; REMANDED.

---

never given notice of a duty to register under SORNA; and that the SORNA conviction violates Belaire's due process rights because no state has implemented SORNA.  Belaire acknowledges that the above three issues are foreclosed by Fifth Circuit precedent, *United States v. Whaley*, 577 F.3d 254, 256-62 (5th Cir. 2009).  He presents them to preserve them in the event of en banc or Supreme Court review.