

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0645-11

### MARK ALAN CRABTREE, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### SMITH COUNTY

ALCALA, J., filed a dissenting opinion, in which JOHNSON and COCHRAN, JJ., joined.

### DISSENTING OPINION

I respectfully dissent. Unlike the Court's majority opinion, I conclude the evidence is sufficient and would uphold the court of appeals's judgment affirming the conviction against appellant, Mark Alan Crabtree, for failure to register as a sex offender. *See Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *8–9 (Tex. App.—Tyler Mar. 31, 2011). The majority opinion determines that the failure-to-register offense requires, as one of its elements, evidence that the Texas Department of Public Safety (TDPS) had previously

determined that appellant's Washington conviction for first-degree child rape was substantially similar to a Texas offense for which he would have been required to register, and that the record contains no evidence of this. But the applicable criminal provision in Texas Code of Criminal Procedure Chapter 62 does not include a TDPS determination as one of its requirements. *See* TEX. CODE CRIM. PROC. art. 62.102(a); *see also id.* at art. 62.001(5) (defining "reportable conviction or adjudication" without mentioning TDPS). I conclude that the pertinent provisions in Chapter 62 can be reasonably understood to have different meanings. These ambiguous provisions must be examined through extra-textual analysis, which shows that the goal of the sex-offender-registration program is to protect the public from sex offenders through monitoring and public notice, and that a defendant's due-process rights may be infringed if a criminal court judge is precluded from making a matter-of-law determination regarding a criminal element of the failure-to-register offense. The legislative goals and due process concerns underlying these provisions are best met by construing the criminal provision as not including a TDPS determination as a statutory element of the criminal failure-to-register offense.

## I. The Ambiguous Statutes Require Extra-Textual Analysis

The criminal provision and the TDPS provision each appear to have plain meaning at first blush, but when examined together, as required, they are ambiguous.

### A. Applicable Legal Standards

Statutory interpretation is a question of law that we review *de novo*. *Nguyen v. State*,

359 S.W.3d 636, 641 (Tex. Crim. App. 2012). In interpreting statutes, we seek to effectuate the Legislature's collective intent and presume that the Legislature intended for the entire statutory scheme to be effective, that a just and reasonable result was intended, and that a result feasible of execution is intended. *See* TEX. GOV'T CODE § 311.021; *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) (in construing plain language in statute, court may look to other provisions within entire "statutory scheme" rather than merely single, discrete provision at issue) (quoting *Murray v. State*, 302 S.W.3d 874, 879, 881 (Tex. Crim. App. 2009)).

To achieve this goal, we necessarily focus our attention on the literal text of the statute and attempt to discern the fair, objective meaning of that text at the time of its enactment. *Nguyen*, 359 S.W.3d at 642. When a statutory term is not defined, we attempt to give effect to its plain meaning or common understanding. *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009). If the plain language is unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add to or subtract from such a statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We give effect to the results of that unambiguous language unless it results in absurd consequences. *Id.* In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits only one understanding. *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim. App. 2007).

**B. Language in Provisions is Ambiguous When Examined Jointly**

**1. The Criminal Provision**

Code of Criminal Procedure article 62.102(a), which I refer to as the "criminal provision," provides that "[a] person commits an offense if the person is required to register and fails to comply with any requirement of this chapter." TEX. CODE CRIM. PROC. art. 62.102(a). The criminal provision thus applies only to people who are "required to register." *Id.* A person who is "required to register" is one who, among other circumstances, has a "reportable conviction or adjudication." *Id.* at art. 62.051(a) (providing that person who has reportable conviction "shall register . . . with the local law enforcement authority"). The term "reportable conviction or adjudication" is defined in Chapter 62 as follows:

> [It] means a conviction or adjudication, including an adjudication of delinquent conduct or a deferred adjudication, that, regardless of the pendency of an appeal, is a conviction for or an adjudication for or based on:
>
> (A) [penal code violations of continuous sexual abuse of young children, indecency with a child, sexual assault, aggravated sexual assault, or prohibited sexual conduct];
>
> (B) [compelling prostitution, sexual performance by a child, or possession or promotion of child pornography];
>
> (C) [aggravated kidnapping if the intent was to violate or abuse the victim sexually];
>
> (D) [burglary if, in general, the intent was to violate or abuse the victim sexually];
>
> (E) [unlawful restraint, kidnapping or aggravated kidnapping if, in general, the victim was under 17 years of age];

. . . .

(G) [an attempt to commit the above described offenses or trafficking of persons except for indecent exposure];

(H) a violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially similar to the elements of an offense listed under Paragraph (A), (B), (C), (D), (E), (G), (J), or (K), but not if the violation results in a deferred adjudication;

(I) [a second violation for indecent exposure; provides "substantially similar" language as in (H)];

(J) [online solicitation of a minor ]; or (K) [trafficking of persons].

*Id*. at art. 62.001(5).

The Chapter 62 definition of a "reportable conviction" thus extends to an out-of-state conviction only if the underlying offense contains "elements that are substantially similar" to the elements of an offense that would be reportable if committed in Texas. *See id.* at art. 62.001(5)(H). Nothing in the Chapter 62 definitions section identifies TDPS as the sole entity that must make a finding of substantial similarity as described in Subsection (5)(H), which is the Subsection violated by appellant, nor is a TDPS determination mentioned in Subsections (5)(I) or (6)(E), both of which include the same reference to "substantially similar" elements of an offense. *See id.* at arts. 62.001(5)(H), (5)(I) & (6)(E).

This Court has previously approached the substantial-similarity determination as a question of law for a court to decide when that issue arises in a criminal proceeding. *See Ex parte Warren*, 353 S.W.3d 490, 495-98 (Tex. Crim. App. 2011). In *Warren*, this Court was

asked to determine whether an out-of-state sex offense was "reportable" for the purposes of Chapter 62, and that same question is at the heart of appellant's sufficiency challenge. *Id.* at 493. This Court determined, pursuant to the Chapter 62 definition of what constitutes a "reportable offense," that certain Illinois sex offenses were "substantially similar" to reportable Texas sex offenses, and, therefore, that Warren was properly subjected to sex-offender parole conditions. *Id.* at 498 (stating that "[b]ased on the foregoing, we conclude that the Illinois offense of Contributing to the Sexual Delinquency of a Child is 'substantially similar' to the Texas offense of Indecency with a Child and constitutes an offense that qualifies a parolee for sex-offender conditions"). This Court determined substantial similarity under Code of Criminal Procedure article 62.001(5)(H), the Chapter 62 provision defining "reportable conviction," without referencing or mentioning the TDPS provision. *See id*. While I acknowledge that *Warren* arose in the context of a habeas corpus application challenging an alleged deprivation of due process regarding conditions of parole, the procedural dissimilarity of *Warren* cannot reasonably be used as the basis for ignoring this Court's decision permitting a criminal court to make the matter-of-law determination irrespective of a TDPS determination. *See id*.

Appellant mistakenly suggests that this Court's decision in *Ex parte Harbin* establishes that a TDPS determination is an element of the criminal provision. 297 S.W.3d 283 (Tex. Crim. App. 2009). But in *Harbin*, it was this Court, not TDPS, that ultimately determined that some of Harbin's out-of-state convictions did not require him to register in

Texas. *Id*. at 287-88. The issue in *Harbin* was not whether TDPS had made a determination, but whether one of Harbin's out-of-state offenses was, as determined by this Court, "substantially similar to a Texas offense that would have required [Harbin] to register as a sex offender in Texas." *Id*. at 285. This Court ruled that some of Harbin's out-of-state offenses were not "substantially similar" to reportable Texas sex offenses. *Id*. at 287-88. Although it considered the absence of a TDPS determination to be persuasive evidence, this Court did not hold that a TDPS determination was a required element for a criminal conviction. *Id*. The Court's approach suggests that TDPS determinations were not considered by this Court to be conclusive evidence of a duty to register.[1] *See id*. at 287.

Until today, no court has interpreted the Chapter 62 criminal provision as requiring proof that a TDPS determination existed at the time of the criminal conduct. I conclude that, in accordance with this Court's approach in *Warren* and *Harbin*, the question of whether two statutes are "substantially similar" is a question of law for a court to determine when that

---

[1]     The Texas courts of appeals that have considered this issue have treated substantial similarity as a matter of law to be determined by the trial court. *See, e.g.*, *Brown v. State*, No. 05–10–00162–CR, 2012 WL 1021444 (Tex. App.—Dallas Mar. 28, 2012, pet. filed) (holding that substantial similarity is question of law for court and that TDPS determination unnecessary for criminal conviction); *Reid v. State*, No. 01–10–00456–CR, 2011 WL 6306630 (Tex. App.—Houston [1st Dist.] Dec. 15, 2011, no pet.) (overruling defendant's sufficiency challenge in failure-to-register case without considering or mentioning TDPS determination). Other jurisdictions also consider this type of inquiry to be a matter of law. *See State v. Prush*, 648 S.E.2d 556, 561 (N.C. App. 2007) (determination of whether elements of out-of-state criminal offense were substantially similar to elements of North Carolina criminal offense "does not require the resolution of disputed facts, and as such, is a matter of law"); *State v. Lloyd*, 970 N.E.2d 870, 877 (Ohio 2012) (whether an out-of-state offense is substantially equivalent to Ohio sex offense requiring registration is matter of law).

question arises in a criminal proceeding. *See Warren,* 353 S.W.3d at 495-98. The plain language of the criminal provision can be reasonably understood as not requiring proof of a TDPS determination.

### 2. The TDPS Provision

The majority opinion reaches its decision by transplanting a requirement of article 62.003 of the Texas Code of Criminal Procedure, which I refer to as the "TDPS provision," into the criminal provision and applicable definitions sections, which do not include that requirement. *See* TEX. CODE CRIM. PROC. art. 62.003(a). The TDPS provision states, "For the purposes of this chapter, the department is responsible for determining whether an offense under the laws of another state . . . contains elements that are substantially similar to the elements of an offense under the laws of this state." *Id.* The majority opinion interprets the TDPS provision as limiting the meaning of "substantially similar" to include only those extra-jurisdictional offenses that TDPS has already determined to be reportable. *Compare id.* at art. 62.001(5)(H), *with id.* at art. 62.003(a). Under this interpretation, the TDPS provision creates the exclusive means by which an extra-jurisdictional sex offender will have a reportable conviction and thus be required to register. *See id.* at arts. 62.003 and 62.051(a) (describing general registration requirements).

I agree with the majority opinion that the TDPS provision could be reasonably read to apply to the criminal provision because the former provision says it applies "for the purposes of" Chapter 62, which is the chapter under which both statutes appear. *See id.* But

the TDPS provision also could be reasonably read as being inapplicable to the criminal provision because the criminal provision does not include an element that requires a TDPS determination. *See id.* at art. 62.102(a). Furthermore, the introduction, "for the purposes of this chapter," pertains to the phrase, "the department is responsible for determining." *See id.* at art. 62.003. By using the word "responsible," the Legislature makes TDPS liable for making a legal determination upon an inquiry from a person or agency. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 998 (10th ed. 1993) (defining "responsible" as "liable to be called on to answer"). This reasonable understanding of the plain words in the TDPS provision would make the department responsible for determining substantial similarity as part of its regulatory function over the sex-offender-registration program, with the burden of making these administrative determinations. Under this interpretation, the TDPS determination would not be an element of the criminal provision because a sex offender from another state could have a "reportable offense" and be required to register, even in the absence of a TDPS ruling. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(H).

Because the criminal provision and the TDPS provision, when read together, can be reasonably understood to have contrary meanings, I conclude that the language in these provisions is ambiguous. I, therefore, disagree with the majority opinion's determination that any conflict can be reconciled without having to turn to extra-textual analysis.[2]

---

[2]    I completely agree with Judge Hervey's point in her concurring opinion that "[i]t is not our job to legislate from the bench" and that "the Legislature has spoken." This point supports the dissenting opinion. In the statute that specifically criminalizes any failure to comply with the requirements of Chapter 62, the Legislature plainly and expressly describes the elements necessary

## II. Extra-textual Analysis Reveals TDPS Evidence Not An Element of Offense

Because there are two reasonable meanings that can be derived from the criminal provision, we may consider limited extra-textual factors to discern the meaning that best honors the will of the Legislature. *See Cornet v. State*, 359 S.W.3d 217, 221 (Tex. Crim. App. 2012). Relevant factors we may consider include (A) the legislative history and circumstances under which the statute was enacted; (B) consequences of a particular construction; and (C) the object sought to be attained. *See* TEX. GOV'T CODE § 311.023; *Clinton v. State*, 354 S.W.3d 795, 800 n.1 (Tex. Crim. App. 2011).

---

to establish a criminal offense, and none of these elements requires proof of any determination by TDPS. *See Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005) ("In discerning whether any given fact constitutes an element of an offense, we look to the plain language of the statute involved"). If the Legislature had intended for the TDPS provision to be an element of the criminal offense, it would have specifically included it in the criminal provision or in the applicable Chapter 62 definitions section. *See, e.g., Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012) (noting that, "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it"). Absent a more explicit statement from the Legislature, this Court should not interpret the TDPS provision as an element of the criminal provision.

Rather than apply the plain words that expressly describe the criminal offense, the majority opinion alters that plain meaning by transplanting a different Chapter 62 provision into the criminal offense. That wholly separate provision, the TDPS provision, was enacted for the purpose of defining TDPS's administrative role. The Legislature's use of the introductory phrase "for the purposes of this chapter" makes the TDPS provision applicable to the nearly fifty articles in Chapter 62 that address administrative matters, such as where and when to register, what information must be collected, public notification requirements, and provisions for juvenile offenders.

The Legislature has expressly instructed courts to consider extra-textual factors when statutory language is ambiguous. *See* TEX. GOV'T CODE § 311.023. Having abided by the Government Code's description of how the Legislature intends for courts to examine statutes, I conclude that a review of the language of the criminal provision and the relevant extra-textual factors makes it abundantly clear that the Legislature never intended for the TDPS provision to alter the elements of the failure-to-register offense. Construing ambiguous language in light of the appropriate extra-textual factors in order to avoid an absurd result does not constitute legislating from the bench.

**A. Legislative History and Circumstances of Enactment**

**1. Inception of Registration Program and Criminal Provision**

Chapter 62, entitled "Sex Offender Registration Program," aims to establish a comprehensive regulatory scheme governing sex-offender registration. The program, including a provision that imposes criminal penalties for non-registration, was initially enacted over 20 years ago, in 1991. *See* Act of June 15, 1991, 72nd Leg., R.S., ch. 572 § 1 (Tex. S.B. 259), effective Sept. 1, 1991. As originally enacted, the criminal provision pertained to individuals convicted of sex offenses in Texas only, but it was soon amended to include individuals with out-of-state convictions. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(H) (Chapter 62 definitions provision, defining "reportable conviction" as an out-of-state conviction for sex offense containing elements "substantially similar" to elements of reportable Texas sex offense), added by Act of May 29, 1995, 74th Leg., R.S., Ch. 258, § 1 (Tex. S.B. 267), effective Sept. 1, 1995. Thus, for almost 20 years, sex offenders convicted in other states who subsequently move to Texas have been required to register when their underlying convictions are for sex offenses "substantially similar" to reportable Texas sex offenses. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(H). The Legislature enacted this provision in furtherance of the program's public safety goals to "ensure that offenders do not fall through the cracks and escape registration." *See* House Research Organization, Bill Analysis, Tex. S.B. 267, 74th Leg., R.S. (1995).

**2. Inception of TDPS Provision**

It was not until 2001, seven years after Chapter 62 was amended to require registration by out-of-state sex offenders, that the Legislature enacted the separate TDPS provision. *See* Act of May 3, 2001, 77th Leg., R.S., Ch. 211 § 2 (Tex. S.B. 1380), effective Sept. 1, 2001. The Legislature enacted the TDPS provision in direct response to *Creekmore v. Attorney General of Texas*, a federal civil lawsuit. *See* House Research Organization, Bill Analysis, Tex. H.B. 2113, 77th Leg., R.S. (2001) (noting that provision was enacted to address concerns raised in lawsuit against Beaumont Police Department); *Creekmore v. Attorney General of Texas*, 341 F. Supp. 2d 648, 655 (2004) (noting that TDPS provision was enacted "during pendency of this suit—and perhaps in response to it").

Creekmore, a sex offender convicted under military law, was advised by federal officials that, upon being released from federal prison, he would be required to register as a sex offender in any state where he chose to reside. *Id.* at 653–54. Federal officials also advised Beaumont law enforcement, where the prison was located, of Creekmore's impending release. *Id.* Creekmore was released from prison and chose to reside in Beaumont. *Id.* Creekmore was then advised by a Jefferson County sheriff's office employee that the employee had determined that Creekmore must register as a sex offender in Texas. *Id.* at 653. Under protest, Creekmore registered as a sex offender, but filed a lawsuit claiming that Texas' sex-offender-registration program violated his constitutional rights. *Id.* Creekmore challenged Texas' sex-offender-registration program on the basis that it "did not designate an entity for making [substantial-similarity] determinations, nor did it provide

process whereby potential registrants could be heard in the matter." *Id.* Importantly, nothing in the *Creekmore* litigation concerned criminal penalties for failure to register or the constitutionality of the criminal provision.

The district court acknowledged that the pre-TDPS provision statutory scheme, which called on law-enforcement officers to make individual registration determinations, had "provided no process whatsoever" before requiring Creekmore to register. *Id*. at 666. The court determined that the pre-TDPS registration procedure was constitutionally inadequate because it called upon an "untrained layman" (each individual law-enforcement officer) to make a difficult legal determination (deciding whether two statutes are substantially similar), thereby presenting a high "risk of error." *Id.* at 666-67.

In responding to the *Creekmore* litigation, the Legislature made a single administrative body, TDPS, responsible for carrying out registration procedures at that preliminary stage. The provision asks TDPS to determine as an initial matter, element by element, whether a particular sex offense from another jurisdiction would subject an individual to registration under Texas law. *See* TEX. CODE CRIM. PROC. art. 62.003(a).

The TDPS provision appears alongside several other administrative tasks assigned to the department and appears to constitute a delegation of administrative responsibility.[3] The

---

[3]    TDPS is the general administrator of the sex-offender program and is responsible for many administrative functions under Chapter 62. For example, TDPS is responsible for determining an individual's primary registration authority; for maintaining a computerized sex-offender database; and for providing sex offender information to other law-enforcement agencies. *See* TEX. CODE CRIM. PROC. arts. 62.004-06.

TDPS provision establishes the department's administrative role by requiring TDPS to annually provide or make available to each prosecuting attorney's office the criteria used to make substantial-similarity determinations, and any "existing record or compilation" of offenses that it had "already determined" were substantially similar to Texas offenses. *See* TEX. CODE CRIM. PROC. art. 62.003(b).

The Legislature also enacted a right of appeal. An individual who desires to challenge a TDPS determination that an offense is substantially similar (and thus reportable) may appeal that determination in a lawsuit that "shall be brought in a district court in Travis county."[4] *See id*. at art. 62.003(c). The opportunity to appeal a TDPS determination in district court is not contingent upon the existence of a criminal prosecution for failure to register, and it is unclear how such a civil-appeals process would function during a pending criminal proceeding for failure to register. *See id*. at art. 62.102(a). I conclude that the establishment of a civil-appeals process is indicative of the civil-regulatory nature of the TPDS provision.

Under my reading of the statutory scheme, sex offenders are still entitled to full procedural protections at the initial registration stage; if someone is dissatisfied with a TDPS

---

[4] This civil-appeals mechanism is frequently used by potential registrants. *See, e.g., Texas Dept. Of Public Safety v. Garcia*, 327 S.W.3d 898 (Tex. App.—Austin 2010, pet. denied) (affirming trial court reversal of TDPS substantial-similarity determination in the context of a civil-administrative appeal); *Texas Dept. Of Public Safety v. Anonymous Adult Texas Resident*, No. 03–11–00602–CV, 2012 WL 3793249 (Tex. App.—Austin Aug. 30, 2012, no pet.) (affirming trial court's reversal of TDPS substantial-similarity determination upon civil challenge by prospective registrant).

registration determination, a civil appeal may be brought to resolve that dispute. *See id.* at art. 62.003(c). Nothing in the dissenting opinion diminishes TDPS's role as administrator of the sex-offender program, nor does it affect the right of appeal to civil court. Both remain in full effect.

I conclude that the most reasonable understanding of the legislative history is that the TDPS provision was intended to satisfy procedural due-process concerns by authorizing a single law-enforcement entity to make the administrative determination regarding substantial similarity for out-of-state offenses, and by establishing a right to appeal that determination in a civil district court. *See* TEX. CODE CRIM. PROC. art. 62.003(a)-(c). But the Legislature never intended for that administrative determination to be dispositive in a criminal trial. The Legislature never mentioned TDPS in the plain words describing the criminal provision or in the applicable Chapter 62 definitions section defining a reportable offense. *See* TEX. CODE CRIM. PROC. arts. 62.001(5)(H) & 62.102(a). And nothing in the legislative history suggests that, by appointing a civil regulatory agency to make administrative determinations, lawmakers intended to dispel criminal courts of their authority to decide whether the elements of a criminal offense have been established as a matter of law.

**B. Consequences from Interpreting that TDPS Exclusively Determines Matter of Law in Criminal Proceeding**

To interpret the TDPS provision as an element of the criminal provision would lead to two negative consequences, which are inconsistent with the legislative intent.

**1. State's Ability to Prosecute Sex Offenders Negatively Impacted**

### a. Offenders Who Knew About Registration Requirements Will Escape Prosecution

The State would be seriously hindered in its ability to prosecute some extra-jurisdictional sex offenders, notwithstanding their knowing or intentional failure to register.[5] Such an interpretation creates a loophole in Texas' sex-offender-registration program that discourages extra-jurisdictional offenders from complying with registration requirements. This result is wholly inconsistent with the Legislative intent to promote public safety by monitoring sex offenders' movements and notifying the public of sex offenders' whereabouts.

The case at bar perfectly illustrates the conundrum: Appellant was convicted of child rape in Washington, a state with a sex-offender-registration program that would have required him to register.[6] Instead, he moved to Texas and did not register. Although evidence at trial showed that he knew he was supposed to register, appellant now argues that he should not be held criminally liable for his failure to register simply because TDPS had not conducted an administrative process at the time he was apprehended. He makes this

---

[5] The criminal provision is not a strict-liability offense. Because no state of mind is specified, proof that the defendant acted intentionally, knowingly, or recklessly is sufficient. *See* TEX. PENAL CODE §§ 6.02, 6.03. In Chapter 62 failure-to-register cases, the *mens rea* requirement applies to the actual knowledge of a duty to register. *See Varnes v. State*, 63 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Here, appellant was found guilty of a knowing or intentional failure to register.

[6] *See* WASH. REV. CODE § 9A.44.130 (2011) (requiring registration in that state for anyone convicted of a sex offense, and requiring sex offenders to register in another state upon relocating), enacted by Act of Feb. 28, 1990, Wash. 51st Leg., Ch. 3.

argument in spite of the fact that he never gave TDPS any opportunity to make a determination because law enforcement was unaware of his status as a sex offender.

This loophole could not have been intended by the Legislature. The regulations contemplate that individuals will comply with the program's requirements on their own accord or face criminal penalties for failure to comply. *See* TEX. CODE CRIM. PROC. art. 62.102(a). The Legislature decided to place the primary responsibility for compliance on offenders and not on TDPS or any other law-enforcement agency. *See Martin v. State*, 252 S.W.3d 809, 819 (Tex. App.—Texarkana 2008, pet. dismissed as improvidently granted) (noting that sex-offender-registration program "does not explicitly provide a sex offender any defense for a failure by the State to do any particular act, such as delivering him or her a particular form" and "with few exceptions, the burdens are placed on the offender."); *Varnes v. State*, 63 S.W.3d 824, 830 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (court "decline[d] to hold that a technical violation of the State's duties under the [failure-to-register] statute necessarily nullifies prosecution under the statute, particularly since the statute expressly makes the prospective registrant responsible for verifying the State's actions and liable for his own failure to act under the statute."). The Legislature chose to place the burden to register directly on sex offenders because of the difficulties inherent in tracking individuals who regularly move from one place to the next. In order for sex-offender-registration programs to have any real impact, the burden of reporting must be placed on offenders and not on law enforcement.

The burden to initiate registration extends even to sex offenders convicted in other jurisdictions. That is because federal law in place since 1994 has effectively required sex offenders who move to another state to inform law enforcement in the convicting state and register in the new state within 10 days. *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, Pub. L. No. 103-322, title XVII, Sec. 170101, 108 Stat. 2038 (1994) (formerly codified at 42 U.S.C. § 14071-73, repealed and superseded by 42 U.S.C. § 16911 *et seq.* (2006)). The Wetterling Act also provided that "[a] person required to register under a State program established pursuant to this section who knowingly fails to so register and keep such registration current shall be subject to criminal penalties in any State in which the person has so failed." *See* former 42 U.S.C. § 14071(c) (1994). By 2001, when the TDPS provision was enacted, federal law also required every state to establish procedures for registering sex offenders from other jurisdictions. *See* 42 U.S.C. § 14071(b)(7) (2001) (each state "shall include in its registration program residents who were convicted in another State and shall ensure that procedures are in place to accept registration information" from such individuals).[7]

Because of the close interaction between state and federal sex-offender laws, sex offenders are on notice of their duty to register in any jurisdiction where they reside. *See*, *e.g.*, *United States v. Whaley*, 577 F.3d 254, 262 (5th Cir. 2009) (actual notice of duty to

---

[7] Today, the federal government directly regulates sex offenders by requiring them to register in any jurisdiction where they reside and imposes a federal criminal penalty upon certain sex offenders who fail to register. *See* 42 U.S.C. § 16913(a); 18 U.S.C. § 2250(a).

register in one jurisdiction is sufficient, for due process purposes, to put sex offender on notice of duty to register with government generally). Appellant was convicted of first-degree child rape, first-degree statutory rape, and first-degree child molestation, and evidence presented at trial demonstrated that he knew he was required to register as a sex offender. The majority opinion's injection of an element not found within the criminal provision has the serious consequence of creating a loophole that allows this convicted child rapist to avoid his duty to register. This cannot be what the Legislature intended.

### b. Offenders Will Escape Prosecution Because TDPS List Will Never Be Complete

As noted by the court of appeals, if the State's ability to prosecute non-registration by extra-jurisdictional sex offenders is contingent upon TDPS having made a substantial-similarity determination, then many sex offenders convicted in other jurisdictions will be able to avoid registration without fear of criminal prosecution. This is because TDPS will likely be unable to meet the Herculean burden of making preemptive substantial-similarity determinations for all eligible offenses. According to the U.S. State Department, there are 195 countries in the world.[8] Taking that number, plus 50 states in the United States, plus the federal government and the military code, TDPS must consider sex-offense laws from approximately 250 jurisdictions and make substantial-similarity determinations for all of them. Because there are few limits on the age of the conviction for which a defendant may

---

[8] Office of The Geographer and Global Issues, Bureau of Intelligence and Research, U.S. Department of State, Washington, D.C. (Jan. 3, 2012).

be required to register, former versions of statutes would also require examination by TDPS. Furthermore, because Texas and foreign statutes are often amended, the process would be perpetual and would require constant monitoring of other jurisdictions' legislative enactments. It is exceedingly unlikely that TDPS could ever compile a complete list of all reportable offenses.

But the primary concern here is not the weight of the administrative burden on TDPS. The real concern is that TDPS would likely never satisfy this burden. This would result in many convicted sex offenders escaping prosecution for failure to register. This could not have been the intent of the Legislature in its efforts to protect the public from all convicted sex offenders, regardless of whether they are homegrown or convicted elsewhere. In contrast, reading the criminal provision exactly as it is written, without inserting the TDPS provision that does not expressly apply to it, best serves the Legislative intent to protect the public from all convicted sex offenders.

## 2. A Defendant's Right to Present Defense Is Negatively Impacted

Incorporation of the TDPS provision as an element of the criminal provision poses a threat to individuals' substantive and procedural due-process rights because a defendant could be subjected to criminal liability on the basis of a mere administrative determination. The majority opinion permits a criminal conviction upon the State's proof that an offense appears on a TDPS list without allowing a defendant the opportunity to challenge, in a criminal court with the benefit of appointed counsel for indigent defendants, the accuracy of

that determination. The Legislature did not intend for TDPS's judgment to supplant the judgment of a court. This is apparent from the fact that the Legislature provided registrants with the opportunity to appeal TDPS administrative determinations to a Travis county district court. *See* TEX. CODE CRIM. PROC. art. 62.003(c). Thus, to hold that a TDPS determination conclusively proves or disproves an individual's duty to register is problematic in the criminal setting because criminal liability then, in effect, hinges on an administrative ruling that was never intended to be conclusive. This is a particular concern among criminal defendants recently released from prison, who are unlikely to have the funds to hire an attorney to challenge this administrative determination by TDPS in a Travis county district court. A defendant convicted under such a statutory scheme would likely have a valid due-process claim that he had been deprived of the opportunity to defend himself against the criminal accusation.[9]

The more reasonable understanding of the language of these provisions is that the TDPS provision describes the civil-regulatory function of TDPS in creating as complete a list as possible of foreign offenses that are substantially similar to Texas offenses, in order to assist law-enforcement agencies in registering sex offenders. If anyone desires to contest

---

[9]     Criminal defendants must be afforded a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."); *California v. Trombetta*, 467 U.S. 479, 485 (1984) (fundamental fairness requires that a criminal defendant be afforded a "meaningful opportunity to present a complete defense").

this determination, he may do so in a Travis county district court, and any determination by that court will only affect this TDPS list. Unlike the civil-administrative proceedings, a criminal prosecution should require that substantial similarity be determined by the court presiding over a defendant's trial.[10]

I would expressly hold that the administrative determination under the TDPS provision is an entirely different matter from the role of courts to decide criminal cases. *See Gregg v. Delhi-Taylor Oil Corp.,* 344 S.W.2d 411, 415 (Tex. 1961) ("[w]here the issue is one inherently judicial in nature . . . , the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body").

There are two due-process concerns at issue in this decision.[11] One is the *Creekmore* situation, which addresses the procedural due-process question regarding registration

---

[10] "[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987) (holding that, when validity of prior deportation is element of a criminal offense in subsequent prosecution, defendant may collaterally challenge validity of prior deportation in pending criminal proceeding). The Supreme Court noted further that, "[e]ven with this safeguard, the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling." *Id*. at 838 n.15.

[11] I do not see any other due-process concerns. If, for example, someone did not register because he was never admonished that his particular conviction required him to register as a sex offender or because a law-enforcement agency refused his registration for any reason, then the State would be unable to prove criminal intent. Either the State or the defendant could challenge any determination by TDPS during the criminal proceedings. Conclusive evidence that the defendant did not knowingly or intentionally fail to register would render the evidence insufficient.

requirements. The other is the due-process concern that a criminal defendant can be convicted of a criminal offense without having the opportunity to defend against the TDPS list in criminal court and without a criminal court making a matter-of-law determination. Both of these due-process concerns are best addressed by the approach set out in this dissenting opinion, which permits a defendant to challenge the TDPS list in civil district court and allows him to challenge the substantial-similarity determination in criminal district court. Because the majority opinion's holding satisfies only the first due-process concern, a defendant's due-process rights in a criminal trial are impeded by its holding.

### C. Object Sought to Be Attained is to Advance Public Safety

The stated legislative purpose behind Chapter 62 is to advance public-safety objectives. The program promotes public safety "by facilitating law enforcement's monitoring of sex offenders and by alerting members of the public who may be in an especially vulnerable situation to take appropriate precautions which could deter or prevent further crimes." *In re M.A.H.*, 20 S.W.3d 860, 863 (Tex. App.—Fort Worth 2000, no pet.). In particular, the Legislature was concerned about high recidivism rates for sex offenders, the unique threat sex offenders pose to public safety, a low incidence of rehabilitation, and sexual misconduct that frequently begins as a juvenile. *See* Senate Research Org., Bill Analysis, Tex. S.B. 259, 73rd Leg., R.S. (1991). Under the program, law-enforcement officers "monitor sex offenders living within their jurisdiction in order better to thwart repeat offenses." House Research Org., Bill Analysis, S.B. 259, 72nd Leg., R.S. (1991). This

monitoring begins when a convicted sex offender seeks to register himself with the local law-enforcement agency. The program is effectively enforced by criminal penalties imposed on convicted sex offenders who fail to register as required. *See* TEX. CODE CRIM. PROC. art. 62.102(a).

The reading suggested by the majority opinion is contrary to the object sought to be attained by the sex-offender-registration program in that it inhibits sex-offender registrations by permitting sex offenders to move to Texas and not register unless and until TDPS makes a substantial-similarity determination. But in cases such as this one, in which an out-of-state sex offender moves to Texas and fails to inquire about his duty to register, Texas law enforcement will be unable to determine if such an individual has a reportable conviction because TDPS is unaware of his presence in the jurisdiction. The criminal provision is most reasonably read as placing the initial burden of inquiring about the duty to register on an out-of-state sex offender, and not on Texas law enforcement, which in many cases is unaware that such an individual has entered the State.

### III. Conclusion

The plain language of the criminal provision does not include any reference to TDPS. The TDPS provision's reference to TDPS's authority to determine substantial similarity must be examined under its intended context: TDPS's authority is exclusive as to the administration of the sex offender registration program. During the sex-offender registration process, only TDPS, and not the thousands of individual police officers from various law

enforcement agencies, decides whether an out-of-state offense is substantially similar to an eligible Texas offense.  But the sex-offender registration process is a distinct  matter from the criminal prosecution for failure to register as a sex offender.  It is absurd to conclude that the Legislature intended for sex offenders to escape criminal prosecution merely because TDPS had not yet placed their criminal offenses on a list, particularly when it is undisputed, as here, that the defendant knew about the requirement to register as a convicted sex offender, and that his conviction is one that is substantially similar to a reportable Texas offense.  It is equally absurd to conclude that the Legislature intended for a defendant to lose his constitutional right to defend against a criminal accusation and for a civil administrative ruling to become binding in criminal court, particularly when there is no express language that makes the TDPS list applicable to the criminal provision.  Limiting the TDPS provision to the civil-regulatory context best protects a defendant's due-process rights and best fulfills the public safety purpose of the sex-offender registration program.  I, therefore, would uphold the court of appeal's judgment affirming the trial court's judgment.

Alcala, J.

Filed: October 31, 2012

Publish